**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES,<br><br>Plaintiff,<br>v.<br>BEST BUY STORES, L.P.; BESTBUY.COM, LLC; AND BEST BUY TEXAS.COM, LLC, Defendants. | Case No. 2:26-cv-01045<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiff XR Communications LLC d/b/a Vivato Technologies ("Plaintiff" or "Vivato") makes the following allegations against Defendants Best Buy Stores, L.P., BestBuy.com, LLC, and Best Buy Texas.com, LLC (collectively, "Defendants" or "Best Buy"):

## INTRODUCTION

1. This complaint arises from Defendants' unlawful infringement of United States Patent No. 8,289,939 (the "'939 Patent" or the "Asserted Patent"), which generally relates to wireless communication technology and, in particular, to coordinating signal transmission and reception among multiple wireless access points. Best Buy sells, offers to sell, and uses Wi-Fi 7 wireless routers, mesh Wi-Fi systems, and range extenders that practice the '939 Patent, both in its many retail stores (including stores in this District) and through its www.bestbuy.com website and mobile applications.

2. Countless electronic devices today connect to the Internet wirelessly. Beyond just

connecting our devices together, wireless networks have become an inseparable part of our lives in our homes, our offices, and our neighborhood coffee shops. In even our most crowded spaces, today's wireless technology allows all of us to communicate with each other, on our own devices, at virtually the same time. Our connected world would be unrecognizable without the ubiquity of sophisticated wireless networking technology.

3. Just a few decades ago, wireless technology of this kind could only be found in science fiction. The underlying science behind wireless communications can be traced back to the development of "wireless telegraphy" in the nineteenth century. Guglielmo Marconi is credited with developing the first practical radio, and in 1896, Guglielmo Marconi was awarded British patent 12039, Improvements in transmitting electrical impulses and signals and in apparatus there-for, the first patent to issue for a Herzian wave-based wireless telegraphic system. Marconi would go on to win the Nobel Prize in Physics in 1909 for his contributions to the field.

4. One of Marconi's preeminent contemporaries was Dr. Karl Ferdinand Braun, who shared the 1909 Nobel Prize in Physics with Marconi. In his Nobel lecture dated December 11, 1909, Braun explained that he was inspired to work on wireless technology by Marconi's own experiments. Braun had observed that the signal strength in Marconi's radio was limited beyond a certain distance, and wondered why increasing the voltage on Marconi's radio did not result in a stronger transmission at greater distances. Braun thus dedicated himself to developing wireless devices with a stronger, more effective transmission capability.

5. In 1905, Braun invented the first phased array antenna. This phased array antenna featured three antennas carefully positioned relative to one another with a specific phase relationship so that the radio waves output from each antenna could add together to increase radiation in a desired direction. This design allowed Braun's phased array antenna to transmit a

directed signal.

6. Building on the fundamental breakthrough that radio transmissions can be *directed* according to a specific radiation pattern through the use of a phased array antenna, directed wireless communication technology has developed many applications over the years. Braun's invention led to further developments in radar, smart antennas, and, eventually, to a technology known as "MIMO," or "multiple-input, multiple-output," which would ultimately allow a single radio channel to receive and transmit multiple data signals simultaneously. Along the way, engineers have worked tirelessly to overcome limitations and roadblocks directed wireless communication technology.

7. At the beginning of the twenty-first century, the vast majority of wireless networks still did not yet take advantage of directed wireless communications. Instead, "omnidirectional" access points and base stations were ubiquitous. Omnidirectional base stations transmit radio waves uniformly around the base station in every direction and do not steer the signal in particular directions. Omnidirectional antenna base stations do typically achieve 360 degrees of coverage around the base station, but with a reduced coverage distance. Omnidirectional base stations also lack sophisticated approaches to overcome certain types of interference in the environment. As only one example, the presence of solid obstructions, such as a building, can limit signal penetration. As another example, interference arises when radio waves are reflected, refracted, or diffracted based on obstacles present between the transmitter and receiver. The multiple paths that radio waves can travel between the transmitter and receiver often result in signal interference that decreases performance, and omnidirectional base stations lack advanced solutions to overcome these "multipath" effects.

8. Moving from omnidirectional networks to modern networks has required an

additional series of advancements that harness the capabilities of directed wireless technology. These advancements range from conceiving various ways to steer and modify radiation patterns, to enhancing the transmission signal power in a desired direction, to suppressing radiation in undesired directions, to minimizing signal "noise," and then applying these new approaches into communications networks with multiple, heterogenous transmitters and receivers.

9. Harnessing the capabilities of directed wireless technology resulted in a significant leap forward in the signal strength, reliability, concurrent users, and/or data transmission capability of a wireless network. One of the fundamental building blocks of this latest transition was the development of improvements to MIMO and "beamforming," and to the coordination of transmission and reception among multiple access points, which are the subject matter of the patent in this infringement action that resulted from the investment of tens of millions of dollars and years of tireless effort by a group of engineers who built a technology company slightly ahead of its time. Their patented innovations laid the groundwork for today's networks, including the Wi-Fi 7 products that Best Buy sells, and are infringed by Defendants.

## THE PARTIES

10. Plaintiff XR Communications, LLC, d/b/a Vivato Technologies ("Vivato" or "Plaintiff") is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 2802 Wildcreek Ct., Keller, TX 76248. Vivato is the sole owner by assignment of all right, title, and interest in the Asserted Patent.

11. Vivato was founded in 2000 as an $80+ million venture-backed company with several key innovators in the wireless communication field including Siavash Alamouti, Ken Biba, William Crilly, James Brennan, Edward Casas, and Vahid Tarokh, among many others. At that time, "Wi-Fi" or "802.11" had become the prominent means of wireless connection to the Internet,

integrated into hundreds of millions of mobile devices globally. Vivato was founded to leverage its talent to generate intellectual property and deliver Wi-Fi/802.11 wireless connectivity solutions to service the growing demand for bandwidth.

12. Vivato has accomplished significant innovations in the field of wireless communications technology. One area of focus at Vivato was the development of advanced wireless systems with sophisticated antenna designs to improve wireless speed, coverage, and reliability. Vivato also focused on designing wireless systems that maximize the efficient use of spectrum and wireless resources for large numbers of connected mobile devices. Ultimately, Vivato's accomplishments expanded beyond "Wi-Fi" and "802.11"-based networks.

13. Vivato's inventions and technology, particularly relating to "MIMO" and beamforming, also apply to wireless communication apart from WiFi, such as communication using cellular networks. Indeed, Vivato's earliest products focused on achieving wireless communication over much longer ranges (i.e., several miles) as compared to a traditional 802.11 Wi-Fi access point.

14. Among many fundamental breakthroughs achieved by Vivato are inventions that allow for intelligent and adaptive beamforming based on up-to-date information about the wireless medium, as well as adaptive beamforming in larger base stations accommodating many beams and many users. Through these and many other inventions, Vivato's engineers pioneered a wireless technology that provides for simultaneous transmission and reception, a significant leap forward over conventional wireless technology.

15. Over the years, Vivato has developed proven technology, with over 400 deployments globally, including private, public and government, and it has become a recognized provider of extended range wireless network infrastructure solutions. Vivato's wireless base

stations integrate beamforming phased array antenna design with packet steering technology to deliver high-bandwidth extended range connections to serve multiple users and multiple devices.

16. Vivato's patent portfolio includes over 17 issued patents and pending patent applications. The patented technology at issue in this case is directed to specific aspects of wireless communication, including the coordination of signal transmission and reception among a plurality of wireless access points.

17. On information and belief, Best Buy Co., Inc. ("Best Buy Co.") is a corporation organized and existing under the laws of the State of Minnesota, with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423. Best Buy Co. is, directly or indirectly, the ultimate parent of each of the Defendants. Best Buy Co. may be served at its principal place of business or through its registered agent for service, CT Corporation System.

18. On information and belief, Defendant Best Buy Stores, L.P. ("Best Buy Stores") is a limited partnership organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423. Its general partner is BBC Property Co., a Minnesota corporation and wholly owned subsidiary of Best Buy Co. Best Buy Stores is registered to do business in Texas and owns or leases, operates, and staffs the Best Buy retail stores in Texas, including the stores in this District identified below. Best Buy Stores has as its registered agent for service in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

19. On information and belief, Defendant BestBuy.com, LLC ("BestBuy.com") is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423. BestBuy.com's sole member is Best Buy Stores. BestBuy.com operates the www.bestbuy.com

website and the Best Buy mobile application, through which it sells and ships products to customers throughout the United States, including customers in this District. BestBuy.com is registered to do business in Texas and has as its registered agent for service in Texas: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

20. On information and belief, Defendant Best Buy Texas.com, LLC ("Best Buy Texas.com") is a limited liability company organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business at 7601 Penn Avenue South, Richfield, Minnesota 55423, and is a direct or indirect wholly owned subsidiary of Best Buy Co. On information and belief, Best Buy Texas.com is the Best Buy entity through which products ordered on www.bestbuy.com and the Best Buy mobile application are sold and delivered to customers in Texas, including customers in this District.

21. On information and belief, Defendants operate as a single, integrated retail enterprise under the "Best Buy" name and brand. Best Buy's own Terms and Conditions state that references to "Best Buy," "our," "we," or "us" "may refer to Best Buy Co., Inc., BestBuy.com, LLC, Best Buy Stores, L.P., BBY Solutions, Inc., Best Buy Enterprise Services, Inc., Magnolia Hi-Fi, LLC, Pacific Sales Kitchen and Bath Centers, LLC, and their affiliates, subsidiaries, and designees." *See* https://www.bestbuy.com/site/help-topics/terms-and-conditions/pcmcat204400050067.c. Products ordered on www.bestbuy.com may be shipped from, picked up at, and returned to Best Buy retail stores, and Best Buy Co. reports the stores, the website, and the resulting revenue. On information and belief, Best Buy Stores, Best Buy.com, and/or Best Buy Texas.com directs and controls the activities of its subsidiaries, including the sale and use of the Accused Products described below, and derives revenue from those activities. Defendants collectively provide consumer-electronics products and services, including the

Accused Products and the Geek Squad services described below, to customers throughout the State of Texas, including in the Eastern District of Texas.

## JURISDICTION AND VENUE

22. This action arises under the patent laws of the United States, Title 35 of the United States Code § 1, et seq, including 35 U.S.C. §§ 271, 281, 283, 284, and 285. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

23. This Court has personal jurisdiction over each Defendant in this action because each Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice. Defendants, directly and through subsidiaries, agents, or intermediaries, have committed and continue to commit acts of infringement in this District by, among other things, using, offering to sell, selling, and importing products that infringe the Asserted Patent, and by inducing and contributing to the infringement of the Asserted Patent, in this District. Defendants are, directly and through intermediaries, using, selling, offering for sale, distributing, advertising, promoting, and otherwise commercializing the Accused Products in this District, including through the Best Buy retail stores located in this District and through sales made on www.bestbuy.com or through its mobile applications to customers in this District. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and derive substantial revenue from goods and services provided to the residents of this District and the State of Texas. Defendants are subject to jurisdiction pursuant to due process and/or the Texas Long Arm Statute due to their substantial business in this State and District including at least their infringing activities, regularly doing or soliciting business at their Texas facilities, and engaging in persistent conduct and deriving substantial revenues from

goods and services provided to residents in the State of Texas including the Eastern District of Texas.

24. Defendants, directly and/or through subsidiaries or intermediaries, have purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patent with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

25. Venue is proper in this District under 28 U.S.C. § 1400(b) because each Defendant has committed acts of infringement in this District and has a regular and established place of business in this District, as set forth below. On information and belief, Defendants are registered to do business in Texas, have transacted business in this District, and have committed acts of direct and indirect infringement in this District by, among other things, using, offering to sell, selling, and importing products that infringe the Asserted Patent.

26. Best Buy Stores owns or leases, operates, staffs, and conducts business from numerous Best Buy retail stores in this District, including stores located at 5514 S. Broadway Avenue, Tyler, Texas 75703; 422 W. Loop 281, Longview, Texas 75605; 4210 St. Michael Drive, Texarkana, Texas 75503; 823 N. Creek Drive, Sherman, Texas 75092; 5885 Eastex Freeway, Beaumont, Texas 77706; 8725 Memorial Boulevard, Port Arthur, Texas 77640; 2800 N. Central Expressway, Plano, Texas 75074; 3333 Preston Road, Frisco, Texas 75034; 5299 Eldorado Parkway, Frisco, Texas 75033; 1751 N. Central Expressway, McKinney, Texas 75070; 190 E. Stacy Road, Allen, Texas 75002; 1800 S. Loop 288, Denton, Texas 76205; and 2601 S. Stemmons Freeway, Lewisville, Texas 75067. Each of these stores is a physical, permanent retail location in this District from which Best Buy Stores, through its employees, regularly sells and offers to sell

the Accused Products to the public, demonstrates and uses the Accused Products, and provides Geek Squad services relating to the Accused Products. Best Buy advertises each of these stores on its website as a "Best Buy" store offering, among other things, "Store Pickup," "Geek Squad Services," and "Smart Home, Security & Wi-Fi" products. *See, e.g.*, https://stores.bestbuy.com/tx/tyler/5514-s-broadway-ave-246.html; https://stores.bestbuy.com/tx/longview/422-w-loop-281-594.html. Each of these stores is therefore a regular and established place of business of Best Buy Stores, and Best Buy Stores has committed acts of infringement including sales and offers for sale of the Accused Products at each of them.

27. BestBuy.com and Best Buy Texas.com have committed acts of infringement in this District by selling and offering to sell the Accused Products to customers in this District through www.bestbuy.com and the Best Buy mobile application, including orders shipped to addresses in this District and orders fulfilled through Best Buy's "Store Pickup," "Curbside Pickup," and ship-from-store programs at the Best Buy stores in this District identified above. On information and belief, BestBuy.com and Best Buy Texas.com conduct their business from those stores: online orders are picked, packed, held, handed to customers, shipped, and accepted for return at those stores by personnel who act on behalf of, and subject to the direction and control of, BestBuy.com and Best Buy Texas.com, pursuant to policies those entities establish for the fulfillment of online orders. On information and belief, BestBuy.com is wholly owned by Best Buy Stores, which operates those stores. The Best Buy stores in this District are therefore regular and established places of business of BestBuy.com and Best Buy Texas.com as well.

28. Best Buy has directly and through the subsidiaries and agents that it directs and controls committed acts of infringement in this District, including the sales, offers for sale, and use

of the Accused Products described above, and it has ratified the Best Buy stores in this District as its own regular and established places of business. In an annual report filed with the Securities and Exchange Commission for the fiscal year ended January 31, 2026, Best Buy Co. represents that it operates 926 Domestic stores, including 98 stores in Texas; that "[a]t the end of fiscal 2026, we employed approximately 82,000 employees in the U.S. and Canada"; and that its online customers can "pick up product from a Best Buy store." *See* https://www.sec.gov/Archives/edgar/data/764478/000076447826000009/bby-20260131.htm. Best Buy holds out each store in this District to the public as a "Best Buy" store on www.bestbuy.com. On information and belief, Best Buy exercises possession and control over the Best Buy stores in this District, which are operated as part of a single, integrated enterprise under Best Buy's direction and control, and separately ratifies the operations of each such store such that each Best Buy store in this District is a regular and established place of business of Best Buy

29. In other recent patent infringement actions in this District, Best Buy.com and Best Buy Stores have appeared and answered. *See, e.g.*, *BoomCloud 360, Inc. v. Best Buy Stores, L.P., BestBuy.com, LLC*, Case No. 2:26-cv-00488-JRG, Dkt. 49 (Answer and Counterclaims).

**BEST BUY'S INFRINGING WI-FI 7 PRODUCTS AND SERVICES**

30. "Wi-Fi 7" is the designation for wireless networking products that implement the IEEE 802.11be amendment to the IEEE 802.11 standard. The Wi-Fi Alliance introduced its Wi-Fi CERTIFIED 7 certification program in 2024. Wi-Fi 7 introduced several new features, including Multi-Link Operation ("MLO"), 320 MHz channels in the 6 GHz band, 4K quadrature amplitude modulation ("4K QAM"), Multiple Resource Units ("Multi-RU"), and preamble (or spectrum) puncturing. *See* https://www.wi-fi.org/discover-wi-fi/wi-fi-certified-7.

31. With MLO, a Wi-Fi 7 access point and a Wi-Fi 7 client device can associate and

simultaneously exchange traffic on multiple bands or channels (for example, the 2.4 GHz, 5 GHz, and 6 GHz bands) and the access point coordinates the traffic among those links, including by steering traffic from one link to another, switching links dynamically based on channel conditions, and restraining transmission on one link while another link is being used to receive. MLO "is a mandatory feature for Wi-Fi 7 certification." *See* https://documentation.meraki.com/MR/Wi-Fi_Basics_and_Best_Practices/Wi-Fi_7_(802.11be)_Technical_Guide; https://blogs.cisco.com/networking/wi-fi-7s-multi-link-operation-mlo-dissection-from-packets-to-performance. For example, in the Enhanced Multi-Link Single Radio ("EMLSR") mode of MLO that many Wi-Fi 7 client devices implement, the client listens on multiple links at once and, depending on the transmit opportunity available on a given link, dynamically switches its radio chains to that link to exchange data, while the access point refrains from transmitting to that client on the other link. Preamble puncturing, likewise a mandatory feature for Wi-Fi 7 certification, allows an access point to "carve out" a portion of a channel that is experiencing interference and to continue transmitting on the remainder of the channel. *Id.*

32. The '939 Patent claims, among other things, an apparatus comprising a wireless input/output unit that is configured to establish a plurality of access points, together with signal transmission/reception coordination logic that monitors those access points for received signals and, upon ascertaining that a first access point is receiving a first signal on a first channel, restrains a second access point from transmitting a second signal on a second, different channel. Wi-Fi 7 routers, mesh systems, and range extenders that implement MLO practice these claims: each establishes a plurality of access points (for example, the 2.4 GHz, 5 GHz, and 6 GHz links of an access-point multi-link device, or the multiple nodes of a Wi-Fi 7 mesh system), monitors those access points for received signals, and restrains transmission on one link or node on one channel

while another link or node is receiving on a different channel, as detailed in Exhibit 2.

33. Best Buy is one of the largest retailers of consumer Wi-Fi networking equipment in the United States. Best Buy sells, offers to sell, and uses Wi-Fi 7 wireless routers, mesh Wi-Fi systems, access points, gateways, and range extenders that support MLO (collectively, the "Accused Products"), in its retail stores and through www.bestbuy.com and the Best Buy mobile applications. The Accused Products include, by way of example and without limitation, the following TP-Link Wi-Fi 7 products that Best Buy sells as the seller of record ("Sold by Best Buy"): the Archer BE800 (BE19000) tri-band Wi-Fi 7 router (Best Buy SKU 6537387); the Archer GE800 (BE19000) tri-band Wi-Fi 7 gaming router (SKU 6593285); the Archer BE11000 Pro tri-band Wi-Fi 7 router (SKU 6578375); the Archer BE9700 tri-band Wi-Fi 7 router (SKU 6623717); the Archer BE6500 dual-band Wi-Fi 7 router (SKU 6583791); the Archer BE550 (BE9300) tri-band Wi-Fi 7 router; the Archer BE230 (BE3600) and Archer BE3600 Pro dual-band Wi-Fi 7 routers; the Deco BE63 (BE10000) tri-band mesh Wi-Fi 7 system (SKU 6569666); the Deco BE16000 quad-band mesh Wi-Fi 7 system (SKU 6566943); the Deco BE5000 dual-band mesh Wi-Fi 7 system (SKU 6578377); and the Deco BE3600 dual-band mesh Wi-Fi 7 system (SKU 6605262). The Accused Products also include, by way of example and without limitation, the following Wi-Fi 7 products that Best Buy offers for sale and, on information and belief, sells on www.bestbuy.com and in the Best Buy mobile applications through the Best Buy Marketplace: the Cudy WR11000 (BE11000) tri-band Wi-Fi 7 router (SKU 10187962), the Cudy WR6500H (BE6500) and WR3600H (BE3600) dual-band Wi-Fi 7 routers (SKUs 10187957 and 10187961), and the Cudy M3600 (BE3600) dual-band mesh Wi-Fi 7 system (SKU 10535097); and the GL.iNet Flint 3 (GL-BE9300) tri-band Wi-Fi 7 router (SKU 13076668), the GL.iNet Flint 3e (GL-BE6500) dual-band Wi-Fi 7 router (SKU 13072465), and the GL.iNet Slate 7 (GL-BE3600) and Beryl 7

(GL-MT3600BE) dual-band Wi-Fi 7 travel routers (SKUs 13065983 and 13072459). The Accused Products further include all other Wi-Fi 7 routers, mesh systems, access points, gateways, and range extenders supporting MLO that Best Buy has made, used, sold, offered for sale, or imported, other than any product expressly licensed under the ’939 Patent.

34. Best Buy markets the Accused Products specifically as “Wi-Fi 7” products and advertises their Wi-Fi 7 capabilities including tri-band and quad-band operation across the 2.4 GHz, 5 GHz, and 6 GHz bands, multi-gigabit wireless speeds, whole-home mesh coverage, and compatibility with Wi-Fi 7 client devices on its product pages, in its stores, and through its sales associates. *See, e.g.*, https://www.bestbuy.com/site/tp-link-archer-be19000-tri-band-wi-fi-7-router-black/6537387.p; https://www.bestbuy.com/site/tp-link-deco-be16000-quad-band-mesh-wi-fi-7-system-with-multi-gig-3-pack-white/6566943.p. Best Buy’s product listings link to and incorporate the specifications, which tout Multi-Link Operation, 320 MHz channels, 4K-QAM, and Multi-RU, and Best Buy distributes user guides, quick-start guides, and setup applications with each Accused Product it sells. *See, e.g.*, https://www.tp-link.com/us/home-networking/wifi-router/archer-be800/ (“Multi-Link Operation”: “Increases throughput, reduces latency, and improve[s] reliability”). Best Buy’s own product pages describe the Multi-Link Operation of the Accused Products. For example, Best Buy’s page for the Archer BE11000 Pro states that “Multi-Link Operation (MLO) enables Archer BE11000 Pro to transmit data with Wi-Fi 7 clients across the 6 GHz, 5 GHz and 2.4 GHz bands simultaneously,” and a question and answer that Best Buy publishes on that page, which Best Buy labels as “generated by AI based on customer and product data,” states that “[t]his router uses Multi-Link Operation (MLO) to transmit data across 3 bands simultaneously.” *See* https://www.bestbuy.com/product/tp-link-archer-be11000-tri-band-wi-fi-7-router-black/J3GWLQQRP8. Best Buy’s page for the Archer BE9700 states that “Wi-Fi 7 Multi-

Link Operation" enables devices "to use multi-link seamless dynamic switching to achieve load balancing and lower latency." *See* https://www.bestbuy.com/product/tp-link-archer-be9700-tri-band-wi-fi-7-router-black/J39T6X26PS. Best Buy's page for the GL.iNet Flint 3 advertises "MLO Technology," including "Multi-Link Operation (MLO), enhanced OFDMA, 4K QAM, and preamble puncturing," and its page for the Cudy WR11000 advertises a "Tri-Band Wi-Fi 7 Mesh Router" with "MLO." *See* https://www.bestbuy.com/product/gl-inet-gl-be9300-flint-3-tri-band-wi-fi-7-router-5-x-2-5g-vpn-router-black/CZT2W4LQZT/sku/13076668; https://www.bestbuy.com/product/cudy-tri-band-wi-fi-7-be11000-router-6-stream-10-gbps-42-5g-ports-up-to-11000mbps-vpn-app-6high-gain-antennas-black/JJ8HCLSTYG.

35. Best Buy offers the Cudy and GL.iNet Accused Products identified above for sale and, on information and belief, sells them on www.bestbuy.com and in the Best Buy mobile applications through what it calls the "Best Buy Marketplace." Best Buy lists those products under the Best Buy name alongside the products it sells as the seller of record, displays their prices and descriptions, offers Geek Squad Protection plans for them, and, on information and belief, accepts customers' orders and payments for them through Best Buy's own shopping cart and checkout. Best Buy tells its customers that "[w]e stand behind our Best Buy Marketplace Sellers and Products," that "[a]ll Best Buy Marketplace transactions use our top-tier, industry-leading security protocols," and that Marketplace purchases "can be made at BestBuy.com, the Best Buy App, or with a Virtual Sales Agent or a Store Consultant." *See* https://www.bestbuy.com/site/marketplace/marketplace-faq/pcmcat273700050015.c?id=pcmcat273700050015. Best Buy also accepts returns of many Marketplace products "at any Best Buy store," where "Best Buy will handle the refund in the store." *See* https://www.bestbuy.com/site/help-topics/return-exchange-

policy/pcmcat260800050014.c?id=pcmcat260800050014. Best Buy therefore offers to sell and, on information and belief, sells those Accused Products, and at a minimum actively induces and contributes to their infringing sale and use.

36. Best Buy does not merely sell the Accused Products; it also sets up, configures, and operates them. Through its Geek Squad services business, Best Buy sells operation and maintenance services including "Home Wi-Fi Setup" and related networking services (e.g., Best Buy SKU 6929147) under which Best Buy's Geek Squad employees set up the customer's router or mesh system both in customers' homes and remotely, and "optimize placement of [the customer's] router," "customize advanced settings," and "recommend solutions to dead spots and slow Wi-Fi speed." *See* https://www.bestbuy.com/site/home-wi-fi-setup/6929147.p. In performing those services for Accused Products, Best Buy uses the Accused Products in the infringing manner and instructs its customers to do the same. Best Buy also offers Geek Squad technical support, protection plans, and membership programs that provide ongoing technical support for the Accused Products.

37. Best Buy Co. reports that networking products are part of its "Computing and Mobile Phones" revenue category, that at the end of fiscal 2026 it operated 926 Domestic stores, including 98 in Texas, and that it employed approximately 82,000 people. Under Best Buy's model, customers may buy the Accused Products in a store, online for shipment to their homes, or online for pickup at a store, such that Best Buy's infringing sales of the Accused Products occur in every Best Buy store and in every state, including in this District.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,289,939

38. Vivato realleges and incorporates by reference the foregoing paragraphs as if fully

set forth herein.

39. Vivato owns by assignment all rights, title, and interest in U.S. Patent No. 8,289,939, entitled "Signal Communication Coordination." The '939 Patent was duly and legally issued by the United States Patent and Trademark Office on October 16, 2012. A true and correct copy of the '939 Patent is attached as Exhibit 1.

40. Defendants have directly infringed and continue to directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '939 Patent, including at least claim 30, in violation of 35 U.S.C. § 271(a), by making, using, offering to sell, selling, and/or importing into the United States the Accused Products without authorization. Specifically, on information and belief: (a) Best Buy Stores has sold, offered to sell, and used the Accused Products in its retail stores throughout the United States, including the stores in this District identified above, and has used the Accused Products in providing Geek Squad services; (b) BestBuy.com and Best Buy Texas.com have sold and offered to sell the Accused Products through www.bestbuy.com and the Best Buy mobile application, including Accused Products listed through the Best Buy Marketplace, to customers throughout the United States, including customers in Texas and in this District; and (c) Best Buy has used, offered to sell, sold, and/or imported the Accused Products, directly and through the subsidiaries and agents that it directs and controls, with each such sale also being an infringing sale by the Best Buy subsidiary that transacted it. Each of the Accused Products is an apparatus that satisfies the '939 Patent, including at least every limitation of claim 30, as shown in Exhibit 2. Defendants are liable for infringement of the '939 Patent pursuant to 35 U.S.C. § 271(a).

41. The Accused Products satisfy all claim limitations of at least claim 30 of the '939 Patent. Claim charts comparing independent claim 30 of the '939 Patent (together with

dependent claims 33-35 and claims 15, 17) to representative Accused Products are attached as Exhibit 2. Exhibit 2 identifies the Wi-Fi 7 functionality, including Multi-Link Operation, dynamic link switching, and preamble puncturing, by which each Accused Product satisfies each limitation of those claims, and Vivato provides it without the benefit of discovery into the Accused Products.

42. Defendants have had actual knowledge of the ’939 Patent, and of their infringement of the ’939 Patent, at least as of the filing and service of this Complaint, which attaches the ’939 Patent (Exhibit 1) and a detailed claim chart (Exhibit 2) that identifies the Accused Products and maps each limitation of at least claim 30 of the ’939 Patent to the specific Wi-Fi 7 functionality of those products. Defendants therefore know that the ’939 Patent exists and which of the products they sell infringe, which claims they infringe, and how the Accused Products meet each limitation of those claims.

43. Defendants knowingly and intentionally induce infringement of one or more claims of the ’939 Patent, including at least claim 30, in violation of 35 U.S.C. § 271(b). Despite their knowledge of the ’939 Patent, Defendants continue to actively encourage and instruct their customers and end users to use the Accused Products in ways that directly infringe the ’939 Patent including by installing and operating them as Wi-Fi 7 routers, access points, and mesh systems with Multi-Link Operation enabled. Among other things, Defendants continue to sell and offer to sell the Accused Products; to advertise and promote their Wi-Fi 7 and mesh capabilities on www.bestbuy.com, in their stores, and through their sales associates; to list, promote, and process sales of Accused Products through the Best Buy Marketplace; to distribute with each Accused Product the user guides, quick-start guides, and setup applications that direct customers to install and operate the product as a Wi-Fi 7 router or mesh system; to install, configure, and optimize the

Accused Products in customers' homes through Geek Squad services; and to provide technical support that directs customers to use the Accused Products' Wi-Fi 7 functionality. On information and belief, Defendants have not modified the Accused Products, their marketing, or their instructions to steer customers toward any non-infringing alternative. Defendants do so knowing and intending that their customers and end users will commit these infringing acts, and knowing or being willfully blind to the fact that the acts they induce infringe the '939 Patent. Accordingly, Defendants specifically intend for others including their customers and end users to directly infringe one or more claims of the '939 Patent in the United States, and it is a reasonable inference that Defendants specifically intended to induce that infringement because Defendants had knowledge of the '939 Patent and actively induced others to directly infringe it.

44. Defendants also contributorily infringe one or more claims of the '939 Patent, including at least claim 30, in violation of 35 U.S.C. § 271(c). Defendants sell and offer to sell within the United States, and/or import into the United States, the Accused Products, including individual Wi-Fi 7 routers, mesh nodes, and range extenders that customers combine with additional nodes and extenders to form and use the claimed apparatus, knowing that they constitute a material part of the invention claimed in the '939 Patent and that they are especially made and especially adapted for use in infringing the '939 Patent. The Accused Products are not staple articles or commodities of commerce suitable for substantial non-infringing use: they are purpose-built Wi-Fi 7 devices whose Wi-Fi 7 radios and multi-link coordination logic are designed, certified, marketed, and sold to establish and coordinate multiple Wi-Fi links in the manner claimed. And that functionality has no substantial use other than the infringing one. That the Accused Products may also perform other, separable functions such as wired Ethernet switching does not make them staple articles. Defendants have known of the '939 Patent, and have known

that the Accused Products are especially made and especially adapted for use in infringing it, at least since the filing and service of this Complaint, and they nonetheless continue to sell and offer to sell the Accused Products.

45. Defendants' continued sale, offer for sale, use, and importation of the Accused Products after receiving notice of the '939 Patent and of the specific infringement identified in Exhibit 2 is knowing, deliberate, and intentional or at a minimum, in reckless disregard of Vivato's patent rights, and it constitutes willful infringement of the '939 Patent. Vivato is therefore entitled to enhanced damages under 35 U.S.C. § 284 for Defendants' infringement of the '939 Patent, and to a finding that this case is exceptional under 35 U.S.C. § 285.

46. By making, using, offering for sale, selling and/or importing into the United States the Accused Products, and by inducing and contributing to the infringement of others, Defendants have injured Vivato and are liable for infringement of the '939 Patent pursuant to 35 U.S.C. § 271.

47. As a result of Defendants' infringement of the '939 Patent, Vivato is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

48. The asserted claims of Vivato's '939 Patent are valid, enforceable, and directed to patent-eligible subject matter.

49. Defendants have had actual notice of the '939 Patent and of their infringement since at least the filing and service of this Complaint, which constitutes notice under 35 U.S.C. § 287(a). Vivato seeks damages for infringement before that date to the extent permitted by 35 U.S.C. § 287.

## PRAYER FOR RELIEF

WHEREFORE, Vivato respectfully requests that this Court enter:

a. A judgment in favor of Vivato that Defendants have infringed, directly and indirectly, either literally and/or under the doctrine of equivalents, the ’939 Patent, and that the asserted claims of the ’939 Patent are valid, enforceable, and patent-eligible;

b. A judgment and order requiring Defendants to pay Vivato its damages, costs, expenses, and pre-judgment and post-judgment interest for Defendants’ infringement of the ’939 Patent, in an amount no less than a reasonable royalty;

c. A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Vivato, including without limitation, pre-judgment and post-judgment interest, and an award of an ongoing royalty for Defendants’ post-judgment infringement in an amount according to proof;

d. A judgment that Defendants’ infringement of the ’939 Patent has been willful, and an award of enhanced damages pursuant to 35 U.S.C. § 284;

e. A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Vivato its reasonable attorneys’ fees and costs against Defendants;

f. Any and all injunctive and/or equitable relief to which Vivato may be entitled including without limitation ongoing royalties with respect to Defendants’ infringement; and

g. Any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Vivato, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: November 19, 2026

Respectfully submitted,

/s/ Reza Mirzaie

Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Paul A. Kroeger (CA SBN 229074)
pkroeger@raklaw.com
Philip X. Wang (CA SBN 262239)
pwang@raklaw.com
James N. Pickens (CA SBN 307474)
jpickens@raklaw.com
Ryan K. Lundquist (CO Bar No. 56449)
rlundquist@raklaw.com
Adam Hoffman
ahoffman@raklaw.com
Jacob Buczko
jbuczko@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

***Attorneys for Plaintiff XR Communications LLC dba Vivato Technologies***